The Honorable Mike Wilson State Representative P.O. Box 5269 Jacksonville, AR 72076
Dear Representative Wilson:
This is in response to your request for an opinion on whether A.C.A. § 5-65-202 (Cum. Supp. 1991) may be legally relied upon by law enforcement officers to administer an involuntary chemical test of the blood, breath or urine, of a railroad train crew involved in a fatal railroad accident, for alcohol content.
It is my opinion that if faced with this question, a court would in all likelihood conclude that A.C.A. § 5-65-202 cannot be relied upon under these circumstances.[1] This Code section, which is part of the Omnibus DWI Act (A.C.A. § 5-65-101et seq.), is commonly referred to as the "implied consent" law. It states as follows under subsection (a):
 Any person who operates a motor vehicle or is in actual physical control of a motor vehicle in this state shall be deemed to have given consent, subject to the provisions of § 5-65-203, to a chemical test or tests of his or her blood, breath, or urine for the purpose of determining the alcohol or controlled substance content of his or her blood . . . [under certain circumstances].
A.C.A. § 5-65-202(a) (Cum. Supp. 1991).
The term "motor vehicle" is not defined under the Omnibus DWI Act. A reading of the Act as a whole, however, suggests that in construing this term, reference may reasonably be made to provisions pertaining to the registration and licensing of vehicles in Arkansas. This conclusion is indicated by the provisions addressing the consequences of arrest and refusal to submit to a chemical test under the Act. Section 5-65-104 states that at the time of arrest for violating § 5-65-103, the arresting officer "shall seize the motor vehicle operator's license of the person arrested." A.C.A. § 5-65-104(a)(1) (Cum. Supp. 1991). If the person is convicted, the license must be transmitted to the Office of Driver Services for suspension or revocation. A.C.A. § 5-65-104(a)(4) (Cum. Supp. 1991). The term "motor vehicle" is defined under the Uniform Motor Vehicle Operator's and Chauffeur's License Act (A.C.A. § 27-16-101 etseq.) as meaning "every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires but not operated upon rails." A.C.A. §27-16-207 (emphasis added). The Office of Driver Services maintains a system of central record files of all motor vehicle operators' and chauffeurs' licenses, and the definition of "operator" and "chauffeur" under that body of law refers to one who operates a motor vehicle within the meaning of the Uniform Motor Vehicle Operator's and Chauffeurs' License Act. See
A.C.A. §§ 27-16-401 and 27-16-204.
It is also significant to note that the Omnibus DWI Act provides for seizure of the motor vehicle and title to the vehicle, under certain circumstances. See A.C.A. § 5-65-117 (Cum. Supp. 1991). Reference to the Uniform Motor Vehicle Administration, Certificate of Title, and Antitheft Act (A.C.A. § 27-14-101 etseq.) yields the following definition of "motor vehicle:"
 `Motor vehicle' means every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails. [Emphasis added.]
A.C.A. § 27-14-207.
There is also some support for the proposition that a court would likely look to the definition of "motor vehicles" under the Uniform Act Regulating Traffic on Highways of Arkansas (A.C.A. §27-49-101 et seq.) in order to discern the meaning of that term under the Omnibus DWI Act. The Arkansas Supreme Court inRobinson v. Sutterfield, 302 Ark. 7, 786 S.W.2d 572 (1990) held that the offense of "driving while under the influence of intoxicants" is a "violation of a law regulating the operation of a vehicle upon a roadway," and thus constitutes a "traffic offense," notwithstanding the fact that it is not codified under Title 27 of the Arkansas Code Annotated (entitled "Transportation"). 302 Ark. at 8-9. Although this case is certainly not determinative of the question, it perhaps portends the court's resort to other Code sections regulating traffic law violations. In this regard, the definition of "motor vehicles" under the Uniform Act Regulating Traffic on Highways of Arkansas encompasses "every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires but not operated upon rails." A.C.A. §27-49-219 (emphasis added).
In conclusion, therefore, it is my opinion, based upon the foregoing, that the implied consent law (A.C.A. § 5-65-202 (Cum. Supp. 1991)) cannot legally be relied upon to administer an involuntary chemical test of the blood, breath or urine of a railroad train crew.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] Whether any other legal basis exists for such action presents a separate question, involving factual determinations, that is not within the scope of this opinion.